Ryder v. The Alton and Sangamon Railroad Company.

SIMEON RYDER, Appellant, v. THE ALTON AND SANGAMON RAILROAD COMPANY, Appellees.

APPEAL FROM MADISON.

The city of Alton and individuals residing in New York, had a clear right to become stockholders in the company in question; and the city can give her proxy to whom she pleases.

One stockholder has no right to direct as to whom the votes of another stockholder shall be cast.

The dividends declared must be general on all the stock, so that each shareholder may receive his proportionate share.

A plea which avers that a party had refused to take certain stock for which he had subscribed, and that another person had agreed to take such stock, and that the commissioners had counted such stock to the latter person, is insufficient; the signature of the first subscriber should have been erased and that of the other substituted, or something should be done so as to hold the latter liable. A subscriber to stock cannot rescind his contract at pleasure.

A subscription to stock, which is created by a charter requiring a certain sum to be paid at the time of subscription, will not be invalidated, if the party subscribing does not actually pay the requisite sum; provided he is a commissioner to receive the money and procure the stock to be taken.

A stockholder of a company may produce and identify a paper in his custody; he may prove that he was the depositary of the muniments of the corporation. A corporator may verify the records of a company.

The books of a corporation are competent evidence for the purpose of showing its acts and proceedings. Such books are sufficient to show *primâ facie* that the prerequisites of a statute have been complied with so as to give a corporation an existence.

The books of a corporation are admissible for the purpose of showing the regularity and legality of *its* proceedings.

As against a subscriber, the minutes of a board of commissioners for taking stock are presumptive evidence to establish that the requisitions of the charter had been complied with, and that the corporation came regularly into existence.

THIS was an action of assumpsit, instituted by the appellees

in the court below, to recover the assessments made on fifty shares of stock which they alleged had been subscribed by the appellant, to the capital stock of said company. The declaration contains six counts, and alleges that the appellant, at two different times, to wit, on the 8th day of May, 1847, subscribed his name for twenty shares of said capital stock, and afterwards for thirty shares of said capital stock, making fifty shares, in the subscription book opened by the commissioners, under the following written heading in said book, to wit: " Alton, May 8th, 1847. We, the subscribers to the capital stock of the Alton and Sangamon Railroad Company, each for himself, in consideration of receiving certificates for the shares of the stock of said company, from Simeon Ryder, the President of the board of commissioners, authorized to open books for subscription to said stock, upon which we have paid five dollars on each share; which number of shares have been hereinafter subscribed by each of us ; do hereby agree, in consideration of having received such certificates of shares of said stock, and in consideration of being one of said stockholders by subscribing therefor, to pay the balance of the instalments due on stock subscribed by us, when the same may be called for by the board of directors of said company, when duly organized in conformity with the charter, approved February 27th, 1847."

To the declaration the appellant filed the following pleas :

*First.* The plea of *nul tiel* corporation.

*Second.* That the amount of capital stock required by the charter to be subscribed before the appellees could organize, had not in fact been subscribed.

*Third.* That at the time when the appellant made the two several subscriptions, in the declaration mentioned, he did so in good faith, and with the understanding that all the subscribers to the stock of said company were to share equally in the benefits and profits of said road, and that their stock should be equal according to the charter of said company ; that after he had made the said subscription, an arrangement was made among certain of the commissioners named in the charter of said company, and the city of Alton, and certain persons residing in the city of New York, for the purpose of injuring and defraud-

ing said appellant, and without his knowledge and consent, and against his will; by which said arrangement, the city of Alton was permitted to subscribe the number of one thousand shares to the capital stock of said company, and the said persons residing in the city of New York, the number of two thousand shares, upon the express understanding and agreement that the New York subscribers should have the proxy of the city of Alton, in all votes of the said company, for the period of eight years; and that the stock of the New York subscribers should be preferred at six per cent. for a like period, thereby yielding and securing to the New York subscribers the whole and absolute control of the said road for the period of eight years, and to their stock, an unfair preference of the stock of the said appellant.

*Fourth.* (*Actio non*, as to the thirty shares of stock.) That at the time when the commissioners named in the charter met for the purpose of ascertaining whether all the capital stock required by the said charter of the said company, had been subscribed, the said appellant refused to take the said thirty shares of stock, on account of the arrangement which had been made between the said commissioners and the city of Alton, and the New York subscribers, as is set forth in the third above plea. And, thereupon, Benjamin Godfrey, one of the said commissioners, agreed to take the said thirty shares of stock in lieu of the said appellant; and upon this agreement, the said commissioners (the said Benjamin Godfrey being present and assenting thereto,) counted the said thirty shares of stock as having been subscribed by the said Godfrey; and, thereupon, voted and declared that the stock had all been subscribed as required by the charter.

*Fifth.* (*Actio non*, as to the thirty shares of stock.) Because, neither at the time when he subscribed said shares, nor at any time since, did he pay five per cent. or any sum whatever, upon the said thirty shares of stock; and avers, that by the provision of the charter of said company, said appellant could not become a stockholder in said company, unless he paid five per cent. upon the stock subscribed by him at the time of subscribing the same.

To the second, third, fourth, and fifth of said pleas, the appellees demurred; and the demurrer was sustained by the court.

The appellees, to sustain the issue on the first plea, then offered to prove by William Martin, who was and is one of the stockholders in said company, that a certain book contained the original minutes of the proceedings of the commissioners named in the charter; to which the appellant objected; but the court overruled the objection, and allowed the said Martin to be sworn and to testify to the above fact; to which decision of the court, in allowing said Martin to be sworn and to testify as a witness, the appellant at the time excepted. The said Martin having testified that said book contained the minutes of the proceedings of the commissioners, and that he was the secretary of said commissioners; the appellees then offered to read in evidence, certain extracts from the minutes of said book, for the purpose of showing that the capital stock required by the charter of said company to be subscribed before said company could organize, had all been subscribed as required by the said charter; to which the appellant objected; but the court overruled the objection, and permitted said extracts from said minute book to be read in evidence; to which decision of the court, in overruling said objection and permitting said minutes to be read, the appellant at the time excepted.

After said minutes had been read in evidence, the appellees then proved that the defendant had subscribed the stock mentioned in the declaration; and, also, that the instalments on the stock had been assessed, and the calls for the same had been regularly made, as required by the charter of said company; which being all the evidence in the cause, the court, UNDERWOOD, Judge, presiding, (a jury having been waived,) found for the appellees at September term, 1851. Whereupon, the appellant, by his counsel, moved for a new trial; which motion was overruled, and judgment rendered in favor of said appellees for $1,750.00; to which decision of the court, in denying a new, trial, and rendering said judgment, the appellant, by his counsel, at the time, excepted. To reverse the said judgment, the appellant now brings this case into the Supreme Court, and assigns the following errors:

LAW SCHOOL LIBRARY

*First.* The court erred in sustaining the demurrer to the third, fourth, and fifth pleas of the appellant.

*Second.* The court erred in permitting William Martin, who was a stockholder in said company, to be sworn and to testify as a witness in said cause.

*Third.* The court erred in permitting the extracts from the minute book of the commissioners to be read in evidence, to prove that the amount of capital stock required by the charter, had been subscribed.

*Fourth.* The court erred in overruling the motion for a new trial, and rendering judgment for the appellees.

Levi Davis, for appellant.

W. Martin and H. W. Billings, for appellees.

Treat, C. J. The *second* plea was not relied on at the argument, and need not be further noticed.

The *third* plea presents no defence to the action. The city of Alton and individuals residing in the city of New York, had a clear right to become stockholders in the company. The commissioners possessed no power under the charter to exclude them, especially as there was no excess of subscriptions to the capital stock. The city had also a clear right to give her proxy to whom she pleased. It is none of the business of one stockholder, for whom the votes of another shall be cast. In this respect, each is at full liberty to act as his judgment or interest may dictate. The arrangement between the city and the New York subscribers, that the latter should receive six per cent. interest on their investments, for the period of eight years, is not binding on the corporation, or the other stockholders. At most, it amounts to but a guaranty on the part of the city, that the dividends on the capital stock, for that length of time, shall be equal to an interest of six per cent. per annum. And this is a matter exclusively between the city and those subscribers. It cannot operate to the prejudice of the remaining stockholders. The dividends must be general on all the stock, so that each stockholder will receive his proportionate share. The directors have no authority

to declare a dividend on any other principle. They cannot exclude any portion of the stockholders, from an equal participation in the profits of the company. If they should attempt to carry into effect any such understanding as this plea discloses, their action would be in gross violation of the rights of the other stockholders, and would not for one moment bind them.

The *fourth* plea is clearly defective. Conceding, for the purposes of this case, the power of the commissioners to permit one person to be substituted as a subscriber in the place of another, it does not appear from this plea that any such arrangement was consummated. The plea simply alleges that the defendant refused to retain the thirty shares of stock, that Godfrey agreed to take them, and that the commissioners counted them as belonging to the latter. This does not show either that the defendant ceased to be a subscriber, or that Godfrey then became one. It fails to show a legal discharge of the one, or a binding assumption by the other. The intended arrangement was left incomplete and unconcluded. The agreement between the defendant and Godfrey remained unexecuted. The signature of the defendant should have been erased from the books of subscription, and that of Godfrey inserted in its place. It ought to appear, from the plea, that Godfrey could be made liable to the corporation, as an original subscriber for the stock. But the facts set forth in the plea, would not be sufficient to charge him as a subscriber. If he cannot be held liable as such, the defendant is still responsible on his subscription. The latter had no right to rescind his contract at pleasure, and he yet continues liable thereon, unless he has been legally absolved from its performance. The plea did not show a valid discharge, and it was properly held insufficient.

The *fifth* plea attempts to invalidate the subscription of the defendant, because five dollars on each share was not paid when the stock was subscribed. If he was to be considered as an ordinary subscriber to the stock of the company, the plea would present an interesting and important question. It was held, in the case of Jenkins *v.* The Union Turnpike, 1 Caines's Cases, 86, that where an act of incorporation requires a certain sum to be paid at the time of subscribing, the direction must be com-

plied with, or the contract of subscription is void. A similar decision was afterwards made, in the case of the Hibernia Turnpike v. Henderson, 8 Serg. & Rawle, 219. The former decision was pronounced by the Court of Errors in New York, against a contrary ruling of the Supreme Court of that State; and the decision in Pennsylvania was made by a divided court. Although the rule has been adhered to in those States in ordinary cases of subscription, their courts have repeatedly refused to extend its application to cases like the present. In the Highland Turnpike v. McKean, 11 Johns. 98, it was determined that a party who was named in the charter as a commissioner, could not insist upon the objection. The court said; " the defendant was a commissioner to receive subscriptions; and he subscribed, while the book was in his own hands. This was, no doubt, a valid subscription, so as to entitle the defendant to the stock subscribed; and it would be a useless ceremony for him to pay himself the money required to be advanced on the subscription." In Grayble v. The York and Gettysburg Turnpike, 10 Serg. & Rawle, 296, the court say; " the plaintiff in error was one of the commissioners, who had authority to receive the five dollars when he made the subscription. It would be a ridiculous ceremony for him to take his money out of one pocket, and put it in the other. Wherever the hand which is to pay, is the hand which is to receive, that is payment and satisfaction, as between the parties, even at law." In Clark v. The Monongahela Navigation Co. 10 Watts, 364, the court held that a subscriber who had exercised the rights of a stockholder, by voting for managers of the company, was thereby estopped to deny the validity of his subscription, because he had not paid the sum required by the charter. These cases are decisive against the defendant. He is concluded from raising the objection. He was one of the commissioners named in the act of incorporation. He was in fact the president of the board, and in that character signed the certificates of stock issued to the subscribers. He had full authority to procure subscriptions to the stock, and receive the five per cent. directed to be paid by the charter. As respects the stock in question, he acted both as a commissioner and subscriber. In judgment of law, he received the money when he sub-

Ryder *v.* The Alton and Sangamon Railroad Company.

scribed for the stock. The five dollars on each share subscribed by him was in his own hands for the use of the company, the instant his subscription was made. Besides ; it was his official duty to require payment from subscribers, and he ought not to be allowed to set up his violation of that duty to defeat the action.

Was Martin a competent witness for the corporation ? He was originally one of the commissioners, and the secretary of the board ; and at the time he was called as a witness, he was a stockholder in the company. The general rule undoubtedly is, that a corporator cannot be called to testify on behalf of the corporation in which he is interested ; but there are some exceptions to the rule, founded chiefly in considerations of convenience and necessity. A corporator may produce and identify a paper in his custody. The King *v.* The Inhabitants of Netherthong, 2 Maule & Selwyn, 337. A corporator may be called to prove that he was the depositary of the muniments of the corporation. The Union Bank *v.* Ridgely, 1 Harris & Gill, 324. The clerk of a corporation is a competent witness to identify its books and verify its records, although he is a member of the corporation, and interested in the suit in which the books and records are to be used as evidence. Wiggin *v.* Freewill Baptist Church, 8 Metcalf, 301. These authorities are conclusive of the question. Martin was called for the single purpose of identifying the minutes of the proceedings of the commissioners. For that purpose, he was clearly competent. His interest would exclude him from becoming a witness for the corporation generally.

Were the minutes themselves admissible in evidence ? The books of a corporation are competent evidence for the purpose of showing the acts and proceedings of the corporation. Highland Turnpike *v.* McKean, 10 Johns. 154 ; Owings *v.* Speed, 5 Wheat. 420. Where certain steps are required to be taken before a corporation has existence, such as the opening of books, subscription of the capital stock, and the choice of directors ; the production of the corporation books, showing the election of officers, is, *primâ facie*, sufficient to show that the prerequisites of the statute have been complied with, and that the corpora-

tion has an existence. Wood *v.* The Jefferson County Bank, 9 Cowen, 194. In an action against a shareholder to recover the amount of his subscription, the books of the corporation are competent evidence to prove the existence of the corporation, and the regularity of the previous proceedings. Gray *v.* Turnpike Company, 4 Randolph, 578. The organization of a company may be established by the corporation books. Duke *v.* Cahawba Navigation Company, 10 Ala. 82. The books of a corporation are admissible in evidence, for the purpose of showing the regularity and legality of the proceedings of the corporation. Hall *v.* Carey, 5 Georgia, 239. In the present case, the minutes of the board of commissioners were properly received in evidence. They were admissible for the purpose of showing that the requisitions of the charter had been complied with, and that the corporation came regularly into existence. As against a subscriber, the minutes are presumptive, but not conclusive evidence of these facts. It would be extremely difficult to establish them in any other mode. The commissioners had the general direction of the company until it was fully organized, and some degree of credit should be given to the record of their proceedings. The minutes must be presumed to be correct, until the contrary is made to appear.

The judgment is affirmed.                    *Judgment affirmed.*